**14**

YOUNG & LAZZARINI
KENRICK YOUNG (CSB #236032)
NICHOLAS LAZZARINI (CSB #259247)
770 L Street, Suite 950
Sacramento, California 95814-7717
916.929.6865 (tel)
916.471.0377 (fax)
info@kenrickyoung.com

Attorneys for Creditor Kenny Kwong, an individual

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | ) Case No. 20-22156 |
| | ) |
| | ) Chapter 11 |
| | ) |
| | ) DCN: KWY-002 |
| | ) |
| | ) **MEMORANDUM OF POINTS AND** |
| EURISKO DEVELOPMENT LLC, | ) **AUTHORITIES IN SUPPORT OF** |
| | ) **MOTION FOR "IN REM" RELIEF** |
| | ) **FROM AUTOMATIC STAY** |
| | ) (11 U.S.C. § 362 and FRBP 4001) |
| | ) (LBR 4001-1 and 9014-1(f)(1)) |
| | ) |
| | ) Date:  May 12, 2020 |
| | ) Time: 2:00 p.m. |
| Debtor. | ) Place: United States Bankruptcy Court |
| | )         501 I Street, 6th Floor, Crtrm. 32 |
| | )         Sacramento, CA 95814 |
| | ) Hon. Christopher D. Jaime |
| | ) |

POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR IN REM RELIEF FROM STAY

- 1 -

YOUNG & LAZZARINI
770 L STREET, SUITE 950
SACRAMENTO, CA  95814-7717
916.929.6865

| | |
|---|---|
| 1 | Creditor Kenny Kwong, an individual (the "Movant") has filed a Motion for In |
| 2 | Rem Relief from Automatic Stay pursuant to 11 U.S.C. § 362(d)(4) (the "Motion") |
| 3 | in the matter of Eurisko Development LLC so that he may proceed with a foreclosure |
| 4 | of the subject real property commonly known as 9 La Noria, Orinda, California |
| 5 | 94563 (APN 262-141-014), the legal description of which is as follows: |

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF ORINDA, COUNTY OF CONTRA COSTA, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

**PARCEL ONE:**
PORTION OF LOTS 368, 369 AND 370, AS SHOWN ON THE MAP OF UNIT NO. 3, HACIENDAS DEL ORINDA, FILED FEBRUARY 16, 1925, MAP BOOK 19, PAGE 473, CONTRA COSTA COUNTY RECORDS, MORE PARTICULARLY DESCRIBED AS FOLLOWS: COMMENCING AT A POINT ON THE CENTER LINE OF THE ROAD KNOWN AS LA NORIA, LOCATED THEREON NORTH 61° 20' EAST DISTANT 79 FEET FROM THE MOST SOUTHERLY CORNER OF LOT 370, AS THE SAID ROAD AND LOT ARE SHOWN ON SAID MAP (19 M 473), AND RUNNING THENCE FROM SAID POINT OF COMMENCEMENT ALONG THE CENTER LINE OF THE SAID LA NORIA, THE FOLLOWING COURSES AND DISTANCES: NORTH 61° 20' EAST, 26 FEET, AND NORTHEASTERLY AND TANGENT TO THE LAST MENTIONED COURSE ALONG THE ARC OF A CIRCLE TO THE RIGHT, WITH A RADIUS OF 194 FEET, A DISTANCE OF 49 FEET; THENCE LEAVING THE CENTER LINE OF THE SAID LA NORIA AND RUNNING NORTH 24° 31' 40" WEST, 173.1 FEET; THENCE SOUTHWESTERLY ALONG THE ARC OF A CIRCLE TO THE RIGHT, WITH A RADIUS OF 103 FEET, A DISTANCE OF 5.02 FEET, THE LONG CHORD OF WHICH BEARS SOUTH 54° 00' 12" WEST; THENCE SOUTHWESTERLY ALONG THE ARC OF A COMPOUND CIRCLE TO THE RIGHT, WITH A RADIUS OF 295 FEET, A DISTANCE OF 69.98 FEET, THE LONG CHORD OF WHICH BEARS SOUTH 62° 11' 45" WEST; THENCE SOUTH 24° 29' 20" EAST, 167.35 FEET TO THE POINT OF COMMENCEMENT.

**PARCEL TWO:**
PORTION OF LOTS 367, 368 AND 370, AS SHOWN ON THE MAP OF UNIT NO. 3, HACIENDAS DEL ORINDA, FILED FEBRUARY 16, 1925, MAP BOOK 19, PAGE 473, CONTRA COSTA COUNTY RECORDS, MORE PARTICULARLY DESCRIBED AS FOLLOWS: COMMENCING AT A POINT ON THE CENTER LINE OF THE ROAD KNOWN AS LA NORIA, AT THE MOST SOUTHERLY CORNER OF LOT 370, AS THE SAID ROAD AND LOT ARE SHOWN ON SAID MAP (19 M 473), AND RUNNING THENCE FROM SAID POINT OF COMMENCEMENT, ALONG THE CENTER OF THE SAID LA NORIA, NORTH 61° 20' EAST, 79 FEET; THENCE LEAVING THE CENTER LINE OF THE SAID LA NORIA, AND RUNNING NORTH 24° 29' 20" WEST, 167.35 FEET; THENCE SOUTHWESTERLY ALONG THE ARC OF A CIRCLE TO THE RIGHT, WITH A RADIUS OF 295 FEET, A DISTANCE OF 73.65 FEET, THE LONG CHORD OF WHICH BEARS SOUTH 76° 08' 37" WEST, TO A

POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR IN REM RELIEF FROM STAY

- 2 -

YOUNG & LAZZARINI
770 L STREET, SUITE 950
SACRAMENTO, CA 95814-7717
916.929.6865

POINT ON THE NORTHERLY PRODUCTION OF THE WESTERLY BOUNDARY LINE OF THE SAID LOT 370; THENCE RUNNING ALONG THE NORTHERLY PRODUCTION OF THE SAID WESTERLY BOUNDARY LINE AND CONTINUING ALONG THE SAID WESTERLY BOUNDARY LINE SOUTH 22° 28' 05" EAST, 186.77 FEET TO THE POINT OF COMMENCEMENT.

**PARCEL THREE:**

RIGHT OF WAY CREATED IN REFERENCE TO PARCELS ONE AND TWO ABOVE IN THE DEED FROM NILS O. EKLUND, JR., ET AL, TO WILLIAM EDWARD KILGO, ET UX, RECORDED JUNE 3, 1959 IN BOOK 3385 OF OFFICIAL RECORDS, PAGE 489, AS FOLLOWS: "A RIGHT OF WAY (NOT TO BE EXCLUSIVE) FOR USE AS A ROADWAY FOR VEHICLES OF ALL KINDS, PEDESTRIANS AND ANIMALS, FOR WATER, GAS, OIL AND SEWER PIPE LINES AND FOR TELEPHONE, TELEVISION SERVICE, ELECTRIC LIGHT AND POWER LINES, TOGETHER WITH THE NECESSARY POLES OR CONDUITS OVER A PORTION OF LOTS 367 AND 368, AS DESIGNATED ON THE MAP ENTITLED 'UNIT NO. 3, HACIENDAS DEL ORINDA, CONTRA COSTA COUNTY, CALIFORNIA', WHICH MAP WAS FILED IN THE OFFICE OF THE RECORDER OF THE COUNTY OF CONTRA COSTA, STATE OF CALIFORNIA, ON FEBRUARY 16, 1925 IN VOLUME 19 OF MAPS, AT PAGE 473, BEING OVER A STRIP OF LAND DESCRIBED AS FOLLOWS: "BEGINNING AT THE NORTHWEST CORNER OF LOT 370, AS DESIGNATED ON SAID MAP (19 MAPS 473); THENCE FROM SAID POINT OF BEGINNING NORTH 87° 49' 50" EAST ALONG THE NORTH LINE OF SAID LOT 370, 34.51 FEET; THENCE NORTH 67° 43' 30" EAST, 63.5 FEET; THENCE NORTH 58° 47' EAST, 26.65 FEET; THENCE NORTH 53° 42' EAST, 31.6 FEET; THENCE NORTH 38° 57' 40" EAST, 58.75 FEET TO THE SOUTHWEST LINE OF A COUNTY ROAD KNOWN AS LA SENDA; THENCE ALONG SAID SOUTHWEST LINE WESTERLY ALONG THE ARC OF A CURVE TO THE LEFT WITH A RADIUS OF 140 FEET, THE CENTER OF WHICH BEARS SOUTH 26° 17' 08" WEST, AN ARC DISTANCE OF 14.87 FEET TO A POINT FROM WHICH THE CENTER OF A REVERSE CURVE TO THE RIGHT WITH A RADIUS OF 175 FEET BEARS NORTH 20° 12' EAST; THENCE NORTHWESTERLY ALONG SAID CURVE TO THE RIGHT WITH A RADIUS OF 175 FEET, AN ARC DISTANCE OF 8.13 FEET TO A POINT FROM WHICH THE CENTER OF SAID CURVE BEARS NORTH 22° 51' 47" EAST; THENCE SOUTH 36° 43' WEST, 50.12 FEET; THENCE SOUTH 53° 42' WEST, 27.72 FEET; THENCE SOUTH 58° 47' WEST, 24.2 FEET; THENCE SOUTH 67° 43' 30" WEST, 33.90 FEET; THENCE NORTH 84° 11' 24" WEST, 29.83 FEET; THENCE SOUTHWESTERLY IN A DIRECT LINE TO THE POINT OF BEGINNING"

(the "Property"). Movant seeks an order that relief from stay will be binding on the Property for any future case purportedly affecting the Property for a period of two (2) years. In the alternative, Movant seeks relief from stay on the Property even if it is not binding on future cases. Movant requests a waiver of the fourteen (14) day stay imposed pursuant to Fed. Rule Bankr. Proc. Rule 4001(a)(3) due to the Mr. Scott's

POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR IN REM RELIEF FROM STAY

- 3 -

YOUNG & LAZZARINI
770 L STREET, SUITE 950
SACRAMENTO, CA 95814-7717
916.929.6865

misconduct, unreasonable risks that Movant is exposed to, and the continuing erosion of his equity cushion.

**FACTS**

On or about March 19, 2019, Premier Money Source, representing a syndicate of investors, provided a loan of $1,135,000 under a First Note and Deed of Trust (the "First DOT") to Debtor Eurisko Development LLC, a Nevada limited liability company ("Eurisko") for the purchase of the Property. Exhibit A, Index of Exhibits in Support of Motion for Relief from Automatic Stay (the "Exhibits").[1] Andre Scott, is the manager and, based upon and information and belief, the 100% owner of Eurisko ("Mr. Scott"). Declaration of Kevin Terry, ¶ 4. Under the terms of the First DOT, Mr. Scott, as manager, promised to make monthly interest only payments of $9,458.33 and a balloon payment of $1,135,000 due on April 1, 2020. Exhibit A, p. 4, Exhibits.

On or about May 10, 2019, Movant provided a loan of $278,000 to Mr. Scott, as manager, under a Second Note and Deed of Trust (the "Second DOT") for the purpose of reasonable rehabilitation and renovation of the Property. Exhibit B, Exhibits; Declaration of Kevin Terry, ¶ 5. Under the Second DOT, Mr. Scott, as manager, was obligated to make monthly payments of $3,142.29 starting July 1, 2019 and a balloon payment of $280,986.68 on April 1, 2020. *Id*. Kevin Terry, a broker from Twin Rivers Capital, Inc., facilitated the Second DOT and is the authorized agent for Movant in this matter. Declaration of Kevin Terry, ¶ 6.

Around July 10, 2019 and after closing of the Second DOT, Mr. Terry became aware that Mr. Scott was in default under the First DOT. Declaration of Kevin Terry, ¶ 7. Mr. Scott also failed to pay any monthly payments due to the Movant under the Second DOT. Declaration of Kevin Terry, ¶ 8. To prevent a foreclosure

---

[1] The Debtor has misidentified the First DOT as FCI, but FCI is merely the loan servicing agent for Premier Money Source.

POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR IN REM RELIEF FROM STAY
- 4 -
YOUNG & LAZZARINI
770 L STREET, SUITE 950
SACRAMENTO, CA 95814-7717
916.929.6865

by the First DOT, Movant began directly making payments due to the First DOT in July 2019.  Declaration of Kevin Terry, ¶ 9.

Moreover, Kevin Terry, directly or through his agents, conducted several site visits, emailed Mr. Scott, and discussed the budget for the Property with Mr. Scott.  In the course of the investigations, Mr. Terry discovered that the work was not being completed with the level of quality originally agreed to, work was being done outside the original scope, or work was not being completed at all.  Mr. Terry could not track if any of the approximately $28,000 in advance loan proceeds under the Second DOT was used as represented on the Property.  Declaration of Kevin Terry, ¶ 10.  Based upon this investigation and the default on payments to the First DOT, the Movant restricted Mr. Scott from further accessing the funds in the Second DOT, declared a default, and began the foreclosure process.  Declaration of Kevin Terry, ¶ 11.

In the months following, the Movant worked with Mr. Scott to modify the loan to allow for an independent contractor to complete the work and thereafter sell the Property to repay all outstanding loan balances.  Declaration of Kevin Terry, ¶ 12.  Mr. Scott and his fiancée, Rosalind Smith, instead chose to engage in an intentional artful plot or plan to delay, hinder, or defraud the Movant.

The Movant scheduled a trustee sale to foreclose on the Second DOT on December 11, 2019.  Declaration of Kevin Terry, ¶ 13.  However, on December 9, 2019, Mr. Scott recorded a deed transferring a 5% interest of the Property to his fiancée, Rosalind Smith.  Exhibit C, pp. 23-26, Exhibits; Request for Judicial Notice, USBC EDC 19-27600, Docket 12, SOFA ¶ 13.  This transfer was a "gift" and no reasonable equivalent value was exchanged.  *Id*.  This fraudulent transfer was not authorized by the Movant, and Mr. Scott gave no forewarning of such a transfer.  Declaration of Kevin Terry, ¶ 16.  On the eve of the foreclosure sale and following the sham transfer, Mr. Scott's fiancée filed her Chapter 13 case on December 10, 2019.  Exhibit C, p. 22, Exhibits; Request for Judicial Notice, USBC EDC 19-27600, Docket 1.

POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR IN REM RELIEF FROM STAY

- 5 -

YOUNG & LAZZARINI
770 L STREET, SUITE 950
SACRAMENTO, CA  95814-7717
916.929.6865

In Rosalind Smith's initial schedules, the Property is listed as her sole real estate asset and the debt owed to the First DOT and the Second DOT was listed as her sole secured debt. Request for Judicial Notice, USBC EDC 19-27600, Docket 12, Schedule A/D. Total other unsecured debt was scheduled as $3,000, even though the combined monthly income was alleged as $10,100 and monthly net income was $3,460 after paying expenses. Request for Judicial Notice, USBC EDC 19-27600, Docket 12, Schedule E/F/I. That is, Rosalind Smith's Chapter 13 appears to have been filed solely because of a two party dispute between Mr. Scott and the Movant. Besides that two-party dispute, there appears to have been no legitimate bankruptcy purpose for the filing.

The proposed Chapter 13 plans in Rosalind Smith's case failed to provide ongoing monthly payments to the Second DOT or provide for the cure of arrears, despite the fact that the Second DOT is in default and no monthly payments have ever been made on account of the Second DOT. Request for Judicial Notice, USBC EDC 19-27600, Docket Nos. 13 and 40). The totality of the facts here indicates that the December 10, 2019 transfer was a sham transfer made in bad faith. The borrower Mr. Scott, as manager, received less than reasonable equivalent value for the transfer. Finally, Mr. Scott and his fiancée Rosalind Smith conspired to engage in the transfer with actual intent to hinder, delay, and defraud Movant for the monies due under the Second DOT. The actual intent to hinder, delay and defraud is readily apparent in their fax sent on December 10, 2019 following the Chapter 13 filing. Exhibit C, pp. 18-29, Exhibits (fax jointly signed by Mr. Scott and Rosalind Smith); Declaration of Kevin Terry, ¶ 14.

The bad acts of Mr. Scott and his fiancée Rosalind Smith was brought forward to the attention of the Court in a Motion for Relief from Stay. Request for Judicial Notice, USBC EDC 19-27600, Docket 49. Upon briefing, oral hearing with attorneys present from both sides, and consideration of the entire docket, the Hon. Robert S. Bardwil found that cause existed under 11 U.S.C. § 362(d)(1) to grant

POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR IN REM RELIEF FROM STAY
- 6 -
YOUNG & LAZZARINI
770 L STREET, SUITE 950
SACRAMENTO, CA 95814-7717
916.929.6865

Movant relief from stay. Request for Judicial Notice, USBC EDC 19-27600, Docket 68. However, on the eve of foreclosure and in defiance of Judge Bardwil's order, Mr. Scott filed this second bankruptcy filing to again hinder, delay, and defraud the Movant.

In the current filing, Mr. Scott misrepresents the status of the filing by (1) failing to disclose the existence of a prior filing (*In re Eurisko Development LLC*, USBC EDC 15-25055) and (2) failing to disclose the affiliated bankruptcy case (*In re Rosalind Smith*, USBC EDC 19-27600). Exhibit D, p. 32, Exhibits. As set forth above, this instant filing is both the second bankruptcy filing to affect the same Property in less than six (6) months and the second bankruptcy filing by Eurisko. The first Eurisko Chapter 11 case was dismissed for failure to file required documents in 2015, but it is otherwise unrelated to the instant case. Request for Judicial Notice, USBC EDC Case No. 15-25055. Additionally, there appears to be no income or assets by which to make required monthly payments under applicable Single Asset Real Estate rules. Exhibit C, p. 32 (disclosure of single asset real estate case), p. 33 (only income was personal loans or non-business income; no Schedule I or J was filed), Exhibits. There also appears to be no unsecured creditors.[2] Further, this instant corporate Chapter 11 was filed without representation of an attorney in violation of LBR 1001-1(c), which makes District Court Local Rule 183 applicable. In summary, this filing appears to be made in bad faith, a continuation of the two-party dispute between Movant and Mr. Scott, and there is no indication that Mr. Scott, as manager, has a good faith intention of resolving his debts in an orderly court process.

The Movant's valuation of the Property is $2,000,000. Eurisko owes Movant a principal balance of $278,000.00, accrued interest of $50,429.80, and costs of

---

[2] While no unsecured creditors were disclosed in Schedule E/F, Mr. Scott did disclose two tradesmen with small disputed/ contingent claims in the creditor matrix. Request for Judicial Notice, USBC EDC Case No. 20-22156 – Docket 1.

POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR IN REM RELIEF FROM STAY

- 7 -

$6,252.92, or a total debt of $334,682.72, on account of the Second DOT. Eurisko owes the First DOT $1,150,000.00. The total of all liens on the Property are $1,484,682.72 and the total equity is $515,317.28. Declaration of Kevin Terry, ¶ 17.

Each Month, Mr. Scott, as manager, is obligated to pay the Movant $3,142.29 on the Second DOT, of which $0.00 is for an impound account. The monthly late charge is $314. Mr. Scott has failed to make any payments on this debt. The total pre-petition payments past due is 10 ($31,422.90) and no post-petition payments past due. Declaration of Kevin Terry, ¶ 18. A notice of default was recorded on August 6, 2019. The notice of sale was published on November 12, 2019. Declaration of Kevin Terry, ¶ 19.

## DISCUSSION

**A. Relief is Warranted under 11 U.S.C. § 362(d)(4).**

Pursuant to 11 U.S.C. § 362(d)(4)[3], a party may request relief from stay of an act against real property "if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either – (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or (B) multiple bankruptcy filings affecting such real property." *See Alakozai v. Citizens Equity First Credit Union*, 499 B.R. 698, 702-703 (B.A.P. 9th Cir. 2013).

To obtain relief under § 362(d)(4), the creditor must show "(1) the debtor engaged in a scheme, (2) to delay, hinder or defraud the creditor, and (3) which involved either the transfer of property without the creditor's consent or court approval or multiple filings." *Alakozai*, 499 B.R. at 703.

1. Debtor Engaged in a Scheme

For purposes of § 362(d)(4), a 'scheme' is "an intentional artful plot or plan to delay, hinder, or defraud creditors." *In re Dorsey*, 476 B.R. 261, 266

---

[3] Unless otherwise indicated, all code references are to Title 11 of the U.S. Code.

POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR IN REM RELIEF FROM STAY
- 8 -
YOUNG & LAZZARINI
770 L STREET, SUITE 950
SACRAMENTO, CA 95814-7717
916.929.6865

1  (Bankr.C.D.Cal. 2012). In other words, "a plan adopted for the nefarious purpose
2  specified in the statute: to delay, hinder and defraud creditors through multiple
3  bankruptcy filings or an improper transfer of property." *In re Duncan & Forbes*
4  *Dev., Inc.*, 368 B.R. 27, 32 (Bankr.C.D.Cal. 2007). The Court may infer the
5  existence and contents of a scheme from circumstantial evidence. *Id*.

6  Here, Mr. Scott, as manager, engaged in a scheme with his fiancée, Rosalind
7  Smith, to improperly transfer a 5% interest in the Property without the consent of the
8  Movant on the eve of a scheduled foreclosure sale. There was no business purpose
9  for the transfer, and even the Debtor characterized the transfer as a "gift." Request
10 for Judicial Notice, USBC EDC Case No. 19-27600, Docket 12, SOFA ¶ 13, p. 43.
11 After the transfer, Rosalind Smith immediately filed a Chapter 13 bankruptcy to
12 invoke the automatic stay to stop the foreclosure. Mr. Scott, as manager, and
13 Rosalind Smith never made any payments on this debt prior to or after filing the
14 Chapter 13 bankruptcy petition. Declaration of Kevin Terry, ¶ 18.

15 The strongest evidence of Mr. Scott, as manager, engaging in a plan of
16 nefarious purpose was the fax letter sent immediately after the Chapter 13
17 bankruptcy filing (the "Fax Letter"). Exhibit C, Exhibits. Mr. Scott and Rosalind
18 Smith jointly signed the Fax Letter. In the letter, they demand a "cease and desist"
19 of the foreclosure sale, misrepresent a Chapter 11 filing, mention an attorney
20 (Patricia Rodriguez) that has never made an appearance or contacted the Movant,
21 and threaten baseless litigation against multiple parties. The Fax Letter also included
22 a copy of the recorded grant deed that improperly transferred the 5% interest in the
23 Property.

24 Furthermore, both the original and current Chapter 13 plan in the Rosalind
25 Smith case provides no payments to Movant and does not attempt to cure the arrears.
26 The most recent Chapter 13 plan classifies the Second DOT in Class 4, which is
27 improper because the debt was in arrears pre-petition and it matures prior to the plan
28 completion date. In summary, the Fax Letter and current Chapter 13 plan makes it

POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR IN REM RELIEF FROM STAY
- 9 -
YOUNG & LAZZARINI
770 L STREET, SUITE 950
SACRAMENTO, CA 95814-7717
916.929.6865

clear that the transfer and Chapter 13 bankruptcy filing was purely a scheme in a two party dispute between the Movant and Mr. Scott. Request for Judicial Notice, USBC EDC Case No. 19-27600, Docket Nos. 13 and 40. The first prong of the *Alakozai* test is satisfied.

       2. Debtor Intended To Hinder, Delay, or Defraud Creditors

To 'delay' for purposes of § 362(d)(4) is to engage in "the act of postponing or slowing." *Dorsey*, 476 B.R. at 268.

Here, Mr. Scott's actions, as manager, have prevented the Movant from foreclosing for five (5) months by the date of this hearing. The originally scheduled foreclosure sale date was December 11, 2019. The unauthorized transfer, Rosalind Smith's bankruptcy filings and delays, including the failure to attend the first 341a meeting, have thwarted the Movant from exercising his legal rights pursuant to the Second DOT. The second prong of the *Alakozai* test is satisfied.

       3. Debtor's Scheme Involved An Improper Transfer Without The Creditor's Consent

Mr. Scott's act of recording of the grant deed in favor of Rosalind Smith constitutes a "transfer." Such transfer was "improper" because it was done without the consent of the Movant, to an insider, for less than reasonably equivalent value, on the eve of a foreclosure sale, and with actual intent to hinder, delay or defraud.

Rosalind Smith's initial schedules were prepared without the assistance of an attorney, and they reveal the structure of the Mr. Scott's scheme. On Part 5, paragraph 13, of the Statement of Financial Affairs ("SOFA"), Rosalind Smith discloses a "gift" of 5% to Andre Scott ("fiancée") on 12/8/2019 of $100,000. Request for Judicial Notice, USBC EDC 19-27600, Docket 12, SOFA, p. 43. This appears to be a reference to the grant deed that was recorded on December 9, 2019 of a 5% interest in the Property (with an approximate value of $100,000) from Mr. Scott, as manager, to Rosalind Smith. Exhibit C, p. 23, Exhibits. The fact that Mr. Scott was an insider of Rosalind Smith, as her fiancée, meant that the transaction was

POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR IN REM RELIEF FROM STAY
- 10 -
YOUNG & LAZZARINI
770 L STREET, SUITE 950
SACRAMENTO, CA 95814-7717
916.929.6865

not arms length. Furthermore, the exchange of a purported $100,000 asset for a $1 nominal consideration on the eve of a bankruptcy filing by insiders shows actual intent to hinder, delay, or defraud. The third prong of the *Alakozai* test is satisfied.

### 4. Debtor's Scheme Involved Multiple Bankruptcy Filings Affecting the Same Property

The order granting relief from stay for Movant to proceed against the Property in *In re Rosalind Smith* became effective on April 22, 2020. On April 21, 2020, Mr. Scott, as manager, filed this instant bankruptcy case to again impose another automatic stay on the same Property, despite the fact that the Court just granted relief from stay. As set forth above, the instant Chapter 11 filing appears to be abusive, a continuation of a two-party dispute, filed in violation of Local Bankruptcy and District Court rules, and shows no income to comply with applicable Single Asset Real Estate rules requiring monthly payments be made to secured creditors. 11 U.S.C. § 362(d)(3). Accordingly, the third prong of the *Alakozai* test is satisfied by an additional reason.

**B. Alternative Relief is Warranted under 11 U.S.C. § 362(d)(1).**

If the Court is unwilling to grant "*in rem*" relief that would be binding on the Property for future cases, alternative relief from stay for cause is appropriate. The Court may terminate, annul, modify, or condition a stay, after a notice and a hearing, for cause. 11 U.S.C. § 362(d)(1). As set forth above, the improper transfer of a 5% interest in the Property to an insider, without the consent of Movant, for less than reasonably equivalent value, on the eve of a foreclosure sale, and with actual intent to hinder, delay or defraud the Movant is "cause" for relief from stay as to the Rosalind Smith Chapter 13 bankruptcy case. The subsequent filing of a Chapter 11 by Rosalind Smith's fiancée, Mr. Scott, as manager, to again impose an automatic stay on the Property immediately after relief from stay was granted is further evidence of a scheme to hinder, delay and defraud orchestrated by insiders.

Additionally, the instant Chapter 11 filing does not appear to be a good faith attempt to resolve the liens affecting the Property because (1) Mr. Scott, as manager, has a history of filing an Eurisko Chapter 11 to only have it later dismissed for failure to file required documents (USBC EDC 15-25055), (2) Mr. Scott failed to disclose this past filing in the voluntary petition despite a direct question requesting such disclosure, (3) Mr. Scott filed this instant petition in violation of Local Rules requiring an attorney to appear on behalf of a corporation, (4) there appears to be no unsecured creditors affected by this filing as set forth in Schedule E/F, and (5) besides personal loans and prior capital contributions, the company has no income by which to pay Chapter 11 expenses or SARE "pay to play" monthly payments to secured creditors (no Schedule I/J were filed). During the course of the entire foreclosure process and delay caused by Rosalind Smith's Chapter 13 bankruptcy filing, Mr. Scott, as manager, has had approximately 10 months to refinance or at least commence monthly payments to secured creditors. He has failed to do so, and there is no reason to think that this instant Chapter 11 filing is different.

**C. Cause Exists to Grant Relief from F.R.B.P. Rule 4001(a)(3) (Waiver of 14-day Stay).**

An order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise. Fed. R. Bankr. Proc. Rule 4001(a)(3). This Court should grant relief from Rule 4001(a)(3) for cause because, as a result of Mr. Scott and the Rosalind Smith's scheme, the Movant is exposed to unreasonable risks from legal action by the First DOT and erosion of his equity cushion, if any. Moreover, Mr. Scott and Rosalind Smith here committed misconduct and should not be rewarded with further delays in the foreclosure process.

As set forth herein, both the First DOT and Second DOT have already matured on April 1, 2020. Exhibits A & B, Exhibits. Currently, the Movant is directly

POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR IN REM RELIEF FROM STAY
- 12 -
YOUNG & LAZZARINI
770 L STREET, SUITE 950
SACRAMENTO, CA 95814-7717
916.929.6865

paying the First DOT to avoid late charges, default interest, foreclosure, and/or other possible legal consequences. As a result of Mr. Scott and Rosalind Smith's nefarious scheme, Movant has been thwarted from exercising his legal rights pursuant to the Second DOT. Since the Movant is unable to timely complete the foreclosure sale, he is in the difficult position of having to pay and satisfy the demands of the First DOT to avoid being placed into default. As a junior creditor, Movant's equity cushion, if any, risks significant erosion with the passage of time and if the First DOT exercises its legal remedies. Movant is not in a position to immediately payoff the entirety of the First DOT. Declaration of Kevin Terry, ¶ 20. Each additional day of delay is a victory for Mr. Scott and Rosalind Smith's goal of hindering, delaying and defrauding the Movant. It should be noted that Mr. Scott and his fiancée Rosalind Smith already received the benefit of a Rule 4001(a)(3) 14-day stay in the Chapter 13 case and the benefit of another stay by this abusive Chapter 11 filing, while the Movant continues to suffer daily harm by erosion of his equity position and having to tender payment to the First DOT to avoid default interest and late charges.

Accordingly, this Court should grant relief and waive the 14-day stay under Rule 4001(a)(3).

## CONCLUSION

Movant is a secured creditor with a nonbankruptcy right to complete his foreclosure sale. Mr. Scott's decision to not pay the First DOT put the Movant in a difficult position of having to pay and satisfy the First DOT. Mr. Scott and Rosalind Smith engaged in a nefarious scheme to improperly transfer a 5% interest in the Property to an insider, without the consent of Movant, for less than reasonably equivalent value, on the eve of a foreclosure sale, and with actual intent to hinder, delay or defraud the Movant. The Hon. Robert S. Bardwil already found cause to grant relief from stay as to the Property in *In re Rosalind Smith*, USBC EDC 19-27600. The instant Chapter 11 filing is in defiance of such order and appears to be an abuse of the bankruptcy process to further hinder, delay, and defraud the Movant.

POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR IN REM RELIEF FROM STAY
- 13 -
YOUNG & LAZZARINI
770 L STREET, SUITE 950
SACRAMENTO, CA 95814-7717
916.929.6865

Movant is entitled to relief under 11 U.S.C. § 362(d)(4). This Court should grant this Motion and order that *in rem* relief from stay as to the Property. Further, the court should order that *in rem* relief should remain binding in any subsequent bankruptcy action affecting the Property for a period of two (2) years from the recording of such order.

In the alternative, this court should grant this Motion and grant relief from stay as to the Property and the Debtor so that Movant may complete his foreclosure sale.

Movant also requests the Court waive the 14-day stay of Bankruptcy Rule 4001(a)(3) due to the unreasonable risks that Movant is exposed to and the continuing erosion of his equity cushion.

Finally, Movant requests any order granting this Motion include the legal description of the Property so the order may be recorded with the Contra Costa County Recorder's Office.

Date: April 23, 2020          YOUNG & LAZZARINI

/s/ Kenrick Young

KENRICK YOUNG
Attorney for Creditor
Kenny Kwong